**DILLARD'S DEPARTMENT STORES, INC., Appellant,**

v.

**Kenneth W. STROM, Appellee.**

**No. 08–93–00136–CV.**

Court of Appeals of Texas, El Paso.

Jan. 12, 1994.

Rehearing Overruled Feb. 2, 1994.

Steven L. Hughes, Mounce & Galatzan, El Paso, for appellant.

Thomas A. Spieczny, El Paso, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

This appeal concerns a dispute between Kenneth W. Strom, a computer salesperson, and his former employer, Dillard's Department Stores, Inc. The trial court entered judgment for Strom based upon the jury's verdict. The jury found that Dillard's had breached its promise to pass on Apple computer repair fees to Strom and had committed fraud, awarding Strom his unpaid fees, mental anguish damages, and punitive damages. We affirm the trial court's judgment.

## FACTS

In 1979, Kenneth Strom began work as a furniture salesperson for Dillard's Department Stores in El Paso, Texas. Within two months, Dillard's transferred him to the electronics department. Strom had an aptitude for computers, and he became Dillard's top computer salesperson. He was also the only certified computer technician at the El Paso Dillard's.

Strom, like all Dillard's salespersons, was paid on a draw-against-commission basis. He earned a 6 percent commission on all gross sales. He was paid a monthly base "draw," an hourly salary, which he was guaranteed regardless of his commission. At the end of each month, his draw was deducted from his commission, and he was paid the difference. If his commissions were less than his draw, however, he would still receive the minimum guaranteed amount.

All Dillard's salespersons, including Strom, were required to perform certain non-selling functions such as cleaning and tagging merchandise. The time spent on non-selling functions was normally charged against commission. For certain "special hours," however, salespersons were paid in addition to their regular draw, and "special hours" were

not charged back against commission. Dillard's policy was to pay special hours whenever a person was off the floor for four hours or more on a special project, or giving and receiving training. Strom's non-selling duties included service work on computers, training other employees, and customer service for computer purchasers. His non-selling hours eventually increased to the point where he worked two, three, or even four hours a day doing non-sale work.

Dillard's sold Apple Computers from 1984 to 1986, and again from 1987 to 1988. Strom volunteered to train as an Apple repair technician, and he eventually earned Apple's highest level of certification as a computer specialist. Strom claimed that Dillard's told him his non-selling hours as an Apple repair technician would not be charged against his commissions, and that he would earn a flat $25 per repair job completed on Apple computers. Apple would send a check for all approved repair work to Dillard's headquarters in Little Rock, Arkansas. Dillard's was then supposed to break down the amounts to be sent to each employee technician, deduct federal withholding and social security taxes, and include the repair fees in the monthly commission check. Strom testified he never received any money for his repairs to Apple computers. In addition to never paying him the $25 fees, Dillard's also continued to deduct his non-selling hours spent on Apple repairs from his commissions. When Strom complained about this, he was told to contact Steve Miller–Watt in Fort Worth, the supervisor in charge of distributing Apple payments to technicians. When Strom did so, he was reprimanded for not following the proper chain of command. Although Strom continued to complain about not receiving the Apple payments, the problem was never resolved. Strom left Dillard's in October 1988. He brought this suit in January 1989.

### SUFFICIENCY OF EVIDENCE TO SUPPORT JURY AWARD FOR APPLE REPAIR PAYMENTS

■ In Points of Error One and Five, Dillard's complains that there was insufficient evidence to support the jury's answers to Questions Five and Six, which were as follows:

> Did Dillard's Department Stores fail to pass on any amounts that it received after January 19, 1985 from Apple Computers for Kenneth W. Strom?
>
> Answer "yes" or "no."
>
> ANSWER: *YES*

· · · · ·

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Kenneth W. Strom for his damages, if any, that resulted from such failure?
>
> Consider the following elements of damages, if any, and none other.
>
> The amount, if any, that Dillard's Department Stores received from Apple Computers after January 19, 1985 for Kenneth W. Strom that Dillard's Department Stores failed, if it did so fail, to pass on to Kenneth W. Strom.
>
> Do not add any amount for interest, if any.
>
> Answer in dollars and cents for damages, if any.
>
> ANSWER: *$25,000.00*

As these two points of error are closely related, we will consider them together.

First, we note that Mr. Strom testified he was never paid for any repair work he did to Apple computers. He was the only person certified to repair Apple computers at the Cielo Vista Dillard's, which was Dillard's top store, of one hundred thirty in the chain, in servicing computers. Strom would service computers sent to him from other stores, as well as those brought to him at Cielo Vista. Strom clearly serviced more Apple computers than anyone else employed by Dillard's.

Steve Miller–Watt testified that he was the Dillard's supervisor in Fort Worth who distributed the Apple repair fees to the technicians who actually performed repairs. He testified that Apple paid Dillard's a flat fee of $25 per repair job, that Dillard's would receive one check from Apple for all repair jobs throughout the chain for a certain period, and that Dillard's was then responsible for breaking down the fees for each technician,

withholding taxes, and sending the individual employees their money. Dillard's was responsible for reporting the money earned to the IRS. He also testified that Dillard's had no problem receiving the fees from Apple.

■ Significantly, Dillard's presented the jury with no documentary evidence (and very little testimonial evidence) that any of the Apple fees were ever passed on to Strom. Dillard's had no records of service repair orders, nor of any payments it received from Apple, nor of payroll records showing the money paid to Strom. It had no IRS records showing the taxes withheld or the income paid to Strom. No internal hard copy records or computer records were produced. Dillard's simply presented no records verifying it made payments to Strom. It had none of its own, and none from Apple or the IRS, both of which would presumably be available even if every shred of evidence possessed by Dillard's was destroyed. Dillard's total failure to produce any records, purportedly within its control and supporting its version of events, was evidence the jury could consider in deciding who to believe. A party's failure to produce important evidence within its control raises a presumption that the evidence, if produced, would be unfavorable. The failure itself is some probative evidence that will support an adverse jury finding. *Kroger Stores, Inc. v. Hernandez,* 549 S.W.2d 16, 17 (Tex.Civ.App.—Dallas 1977, no writ); *Claybrook v. Acreman,* 373 S.W.2d 287, 291 (Tex.Civ.App.—Beaumont 1963, writ ref'd n.r.e.); *Union Transports, Inc. v. Braun,* 318 S.W.2d 927, 932 (Tex.Civ.App.—Eastland 1958, no writ).

We find this is ample evidence to support the jury's conclusion that Dillard's failed to pass on to Strom the service fees paid by Apple. Point of Error Five is overruled.

As to the $25,000 figure decided upon by the jury as the amount Dillard's owed Strom, we find that is supported by the following exchange between Strom and his counsel:

Q: Is this all of the work you did on Apple?

A: No, sir.

. . . . .

Q: But what—what is reflected in Exhibits 12, 13 and 14, is that all of it?

A: All of the Apple service?

Q: Yes.

A: No, sir.

. . . . .

Q: Let me ask you something, Mr. Strom. What we're talking about is work you, yourself personally did?

A: That's correct, sir.

Q: Nobody else—

A: Nobody else.

Q: —At Dillard's store repaired a single one of them?

A: That's correct, sir.

Q: So you personally did the work on every one of these repair orders?

A: That's correct, sir.

Q: As the person who did the work—

A: Yes, sir.

Q: —Do you have an opinion as to how much work you did?

A: How many work orders?

Q: Yes. I'm not asking for an exact number, but do you have—

A: Over 1,000.

Strom testified that he was supposed to receive the flat service fee of $25 per service job he performed on Apple computers while at Dillard's. He also testified that he never received anything for that work. One thousand repair jobs at $25 per job is $25,000. Although Dillard's has another theory of how the jury should have calculated its answer to this question, the jury's finding that Dillard's failed to pass on $25,000 is nevertheless supported by the evidence. Point of Error One is overruled.

### STATUTE OF LIMITATIONS

■ In Point of Error Two, Dillard's complains that Strom was barred by the four-year statute of limitations from recovering any amount for the unpaid Apple service fees, because he did not raise that issue in his original petition, and his first mention of it, in his first amended petition filed November 26, 1991, came too late. Dillard's argues that this claim does not relate back to the

filing date of the original petition, January 19, 1989, because this was a new, distinct, and different occurrence, separate from anything previously alleged against the department store. We disagree.

■ Texas Civil Practice & Remedies Code § 16.068 governs application of the statute of limitations in situations such as this. It provides:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitations unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence. TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986).

Even where the amended petition contains new causes of action, they are not barred by limitations unless they arise from a wholly different transaction. *Stevenson v. Koutzarov*, 795 S.W.2d 313, 319 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Southwestern Bell Telephone Co. v. Wilson*, 768 S.W.2d 755, 761 (Tex.App.—Corpus Christi 1989, writ denied).

In plaintiff's original petition, Strom did not specifically mention his work as a certified Apple repair technician. He did allege, however, that:

> On or about April 9, 1979, Plaintiff began the duties of employment and duly performed all the conditions of the employment agreement until October 13, 1988, when Plaintiff resigned his employment with Defendant because of the continued breach of the employment contract by the Defendant. At all times Plaintiff has been well and able to perform the terms of the contract, but has been prevented from doing so by the Defendant's repudiation and constant breach of the same. Plaintiff was specifically ordered by his supervisor and the various managers of the store to perform the following services:

> *Repair work on the various electronic items returned by the customers of the store.*

> . . . . .

> Stocking of electronics items and *Authorized Computer Service work.* [Emphasis added].

Strom's original petition also alleged that Dillard's knowingly benefitted from the services rendered by Strom in excess of, and in addition to, his employment contract as an electronics salesman, and that Dillard's "failed and refused to tender the just amount owing" Strom.

On November 26, 1991, in response to defendant's special exceptions, plaintiff filed his first amended petition. That pleading detailed Strom's allegations regarding his duties as Apple repair technician, and set out in further detail the promises made and broken by Dillard's personnel. We find that the amended petition did not include allegations wholly based on new, distinct, or different transactions than those outlined in plaintiff's original petition. The amended petition related back to the allegations contained in the original petition, and therefore plaintiff's cause of action regarding the Apple repair income was not barred by the four-year statute of limitations. The trial court correctly overruled Dillard's motion for judgment *non obstante veredicto.* Point of Error Two is overruled.

### FRAUD

■ In Point of Error Three, Dillard's urges that there was legally or factually insufficient evidence to support the jury's finding that Dillard's acted fraudulently. This is an area of the law we have visited repeatedly and frequently, with only fair success at navigating the muddy waters marking the boundary between contract and tort. See *Airborne Freight Corp., Inc. v. C.R. Lee Enterprises, Inc.*, 847 S.W.2d 289 (Tex.App.—El Paso 1992, writ denied); *Odom v. Meraz*, 810 S.W.2d 241, 245 (Tex.App.—El Paso 1991), writ denied, improvidently granted, 835 S.W.2d 626 (Tex.1992); *El Paso Development Co. v. Ravel*, 339 S.W.2d 360, 367 (Tex. Civ.App.—El Paso 1960, writ ref'd n.r.e.). Here, we find there was sufficient evidence

from which the jury could conclude that Dillard's acted fraudulently towards Strom, thus supporting a mental anguish award.[1]

■ Dillard's argues that the promises upon which Strom relied were not enforceable in contract, and therefore cannot form the basis of liability in tort. This is so, Dillard's urges, because the statute of frauds does allow enforcement of oral promises to pay the debt of another. We do not agree with Dillard's characterization of its obligation to Strom as that of paying a debt owed Strom by Apple.

The record is clear that Dillard's received a lump sum check from Apple, covering all labor on all approved Apple computer repairs throughout the Dillard's chain. Dillard's was then responsible for breaking down the amounts owed to each employee, deducting the appropriate amounts for taxes, and distributing compensation to its employees. Apple never obligated itself to pay the individual technicians, only Dillard's. The technicians never worked directly for Apple, but instead repaired Apple computers purchased at Dillard's, at Dillard's stores, and during their regularly scheduled working hours. We do not believe this arrangement can fairly be called an obligation to pay the debt of another. Dillard's was paid by Apple, and Dillard's in turn made an agreement with its computer technicians, including Ken Strom, to pay for repair work in addition to his regular draw-against-commission. There was no evidence, moreover, that Dillard's had any trouble collecting its money from Apple; to the contrary, Steve Miller–Watt testified the chain experienced no problems receiving Apple's payments. The jury could reasonably find that Dillard's made its promise to pay Strom without intending to perform, based upon Strom's assertion that he was never paid for his repair work as agreed, and based upon Dillard's complete failure to produce any documentation that it had, in fact, made the payments.

■ Dillard's next argues that its statements to Strom that "things would change" and he would be given fewer non-selling hours was purely promissory, concerned only

future conduct, and therefore will not support a finding of fraud. We find we need not reach this argument. The jury found in Dillard's favor on Strom's contract claim based upon these same allegations. Specifically, the jury answered "yes" to Question No. 3:

> Did Kenneth W. Strom continue his employment with Dillard's Department Stores after he had notice that he would be required to perform more than minimal non-sales duties and that any hourly salary paid for non-sales duties would be deducted from his commission?

This answer precluded Strom's recovery under this theory. We believe that Dillard's is correct in asserting that if Strom could not recover under this contractual theory, neither could he recover in fraud for the same representations. Nevertheless, we find that the evidence and findings regarding the Apple repair fees are sufficient, legally and factually, to support the jury's conclusion that Dillard's acted fraudulently in its dealings with Strom. Point of Error Three is overruled.

### *MENTAL ANGUISH*

■ Similarly, in Point of Error Four, Dillard's argues that there was legally or factually insufficient evidence to support the jury's award for mental anguish damages. Again, this is an area of law which this Court has visited numerous times. *Worsham Steel Co. v. Arias*, 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ); *State Farm Mutual Automobile Ins. Co. v. Zubiate*, 808 S.W.2d 590 (Tex.App.—El Paso 1991, writ denied); *Skaggs Alpha Beta, Inc. v. Nabhan*, 808 S.W.2d 198, 202 (Tex.App.—El Paso 1991, no writ); *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Dominguez*, 793 S.W.2d 66, 73 (Tex.App.—El Paso 1990), rev'd, No. D–0040, 1994 WL 1926 (Tex. Jan. 5, 1994). We note that each case involving a mental anguish award is to be reviewed on its own facts, and that once plaintiff establishes some amount of mental anguish, the jury's decision as to the amount awarded in compensation is "virtually unreviewable." *Worsham Steel Co.*, 831 S.W.2d at 85. The

---

1. *Dillard's does not challenge the punitive damage award.*

courts have consistently defined mental anguish as: ·

> [A] relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, and/or public humiliation. *Trevino v. Southwestern Bell Telephone Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ).

Dillard's claims that Strom's mental anguish evidence is lacking in two respects: it fails to show proximate causation between Dillard's fraud and Mr. Strom's mental suffering, and does not rise to the level of affliction required by the jury charge and case law. We disagree.

Strom testified that the pressure and tension at Dillard's forced him to resign his $36,000 per year job. The problems with Dillard's cause him to have "horrendous fights" with his wife, and caused him a lot of pressure which finally led to his seeking psychological help from a doctor at the Veteran's Administration. The doctor prescribed medication for him, but he stopped taking it after a few days because he wanted to "lick this my own way...." Strom further testified that his supervisor's "constant threats of termination" and intimidation "created an environment of intolerable stress." Strom's supervisor testified that their conversations about compensation would get "heated," and that Strom would become upset and emotional. This became worse towards the end of Strom's employ with Dillard's. We find this evidence is sufficient to support the jury's mental anguish award, both as to the level of mental suffering required by the law, and as to causation. Point of Error Four is overruled.

### CONCLUSION

Having overruled each of Appellant's five points of error, we affirm the trial court's judgment.

OSBORN, C.J., not sitting.