**STEWART TITLE GUARANTY CO., Appellant,**

v.

**Roger N. AIELLO and Evelyn S. Aiello, Appellees.**

No. 08–93–00289–CV.

Court of Appeals of Texas, El Paso.

Oct. 19, 1995.

Rehearing Overruled Dec. 14, 1995.

S. Bradley Todes, Ben A. Baring, Jr., Charles E. Fitch, De Lange, Hudspeth & Pitman, L.L.P., Houston, John S. Birkelbach, Mounce & Galatzan, El Paso, for Appellant.

I. Nelson Heggen, Leslie Werner de Soliz, Houston, for Appellees.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

LARSEN, Justice.

We withdraw our original opinion of December 22, 1994 and substitute this opinion in its place.

This appeal stems from a lawsuit against a title insurer by its insured, following the insurer's delayed payment under an agreed judgment. The primary issue in this case is whether an insurer's duty of good faith and fair dealing survives entry of an agreed judgment. We find that here the duty did survive. We affirm in part and reverse in part.

### PROCEDURAL BACKGROUND

Roger and Evelyn Aiello sued Stewart Title Guaranty Company and others claiming that Stewart delayed in paying an agreed judgment. The basis of the underlying judgment was a cloud on the title of the Aiello's home, insured by Stewart Title. The title company had been recalcitrant in the underlying litigation, the trial court finally striking its pleadings as a discovery sanction.[1] On the courthouse steps, the parties reached an agreement settling their dispute. The subject of this appeal is the breach of the agreed judgment stemming from that settlement.

The Aiellos alleged several causes of action in their second suit against several defendants: breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act (DTPA) and Article 21.21 of the Texas Insurance Code (Article 21.21), breach of contract, negligence, and gross negligence. Stewart counterclaimed for breach of contract and attorney's fees based on the same agreed judgment, alleging the Aiellos had breached by refusing to deliver a deed for some fourteen months after it had paid the principal amount of the judgment. The trial court granted final summary judgment in favor of all defendants except Stewart, and granted Stewart partial summary judgment on all but the breach of the good faith duty and breach of contract claims for acts occurring after signing of the agreed judgment. These claims were tried to a jury which found for the Aiellos on the breach of the good faith duty and breach of contract and for Stewart on its breach of contract counterclaim.

The trial court awarded the Aiellos $26,847 as the amounts due under the agreed judgment, $23,734.60 as actual damages in this cause, $200,000 as exemplary damages, and attorney's fees. Although it gave Stewart a credit for $10,000 damages for Aiellos' breach, the trial court refused to award Stewart any amount for attorney's fees. Stewart appeals the trial court's ruling on ten points of error alleging, among other things, that the trial court's application of the duty of good faith and fair dealing to this agreed judgment was incorrect as a matter of law. The Aiellos cross-appeal on seven points of error.

### FACTS

The dispute between the Aiellos and Stewart Title began when the Aiellos discovered a municipal utility easement on their property upon which their house encroached two feet. The title policy issued by Stewart failed to describe this defect. Nevertheless, Stewart refused to pay the Aiello's claim for the diminished value of their land. In October 1986, the Aiellos brought suit against Stewart alleging that the insurance company had breached a title insurance policy issued to the Aiellos and also alleging various violations of the Texas Insurance Code. On the day the first suit was set for trial, February 29, 1988, the parties settled. Their agreement was dictated into the record, and an agreed judgment signed by the court on April 11, 1988. That judgment, which incorporated the oral recitation of the parties' agreement, read:

> On the 29th day of February, 1988, came on to be heard the above-styled and -numbered civil action, and EVELYN S. AIELLO, Plaintiff, appeared in person and by attorney of record and announced ready for trial and Defendant, STEWART TITLE GUARANTY COMPANY, appeared through its attorney of record and announced ready for trial and the case proceeded to trial.

1. Stewart persuaded the trial court to allow it a trial on damages by stipulating to liability.

After lengthy negotiations, on March 1, 1988, the following Compromise Settlement was announced in open Court:

MR. MITCHELL: 'Stewart Title Guaranty Company has agreed to purchase the residence owned by the plaintiffs. I believe the correct property description is Lot 7, Block 12 of Virginia Court, a subdivision in West University—the City of West University in Harris County, Texas.'

MR. STEIN: '2627 Amherst Street.'

MR. MITCHELL: 'The purchase price of the property is going to be $280,000.00. Stewart Title Guaranty Company will receive a $1,000 credit *at the closing* and the net proceeds to be paid to the Plaintiffs in this action is $279,000.00. Stewart Title Guaranty Company will take title in the name of a nominee at Stewart Title Guaranty Company's choice because title will not vest as a result of the closing in Stewart Title Guaranty Company itself.' [Emphasis added.]

'The plaintiffs are to receive an additional $40,000.00 from Stewart Title Guaranty Company, payable by check to be received at the closing but not to be transferred to the plaintiffs in the closing itself.'

MR. STEIN: 'Is it agreeable that that could be a cashier's check.'

MR. MITCHELL: 'Well, do you have a problem with Stewart's check?'

MR. STEIN: 'Well, I may. Let's just do it by cashier's check since most closings have that as a consideration.'

MR. MITCHELL: 'Well, that's why I said $40,000.00 will be paid to you at closing but out of the closing. In other words, the $40,000.00 is not going to flow through the escrow account of the title company.'

MR. STEIN: 'We don't necessarily have to put all of this on the record but considering the fact that my clients are presently residing in Singapore, they will have to wait here for the closing. I would appreciate the opportunity of transferring funds immediately by cashier's check rather than waiting for some type of bank draft or other legal instrument to clear an account.

That's why I'm requesting that it be done by cashier's check.'

MR. MITCHELL: 'Well, that's acceptable.'

It appearing to the Court that judgment should be rendered upon this Compromise Settlement in favor of the Plaintiffs and against the Defendant, it is, therefore,

ORDERED, ADJUDGED and DECREED by the Court that Plaintiffs, ROGER N. and EVELYN S. AIELLO, recover from Defendant STEWART TITLE GUARANTY COMPANY $319,000.00. Upon payment of such sum by cashier's check, Plaintiffs will deed over to the nominee of Stewart Title Guaranty Company's choice certain property described as Lot 7, Block 12 of Virginia Court a subdivision in the City of West University in Harris County, Texas, further described as 2627 Amherst Street.

All costs of Court expended or incurred in this cause are hereby adjudged against Defendant STEWART TITLE GUARANTY COMPANY. All writs and processes for the enforcement and collection of this Judgment or the costs of Court may issue as necessary.

SIGNED this the 11 [sic] day of April, 1988.

Such cost to include costs of 100.00 per day from March 20, 1988 until closing papers are signed and funds received by Plaintiffs.[2]

——————————Richard Millard
——————————JUDGE PRESIDING

After the agreed judgment was entered, Stewart's attorney ignored repeated letters and telephone calls from the Aiellos' attorney attempting to complete the settlement. Officers of the title company, subpoenaed for depositions to aid in collecting the judgment, failed to appear without explanation. Although both sides had anticipated that Stewart would arrange a closing to transfer the property, and indeed received $1,000 credit in the judgment for this service, it never took steps to do so. It was not until June 3, 1988, after the Aiellos obtained a writ of execution and a constable arrived at Stewart's offices

**2.** This paragraph was handwritten. All parties agree that it was part of the judgment.

to enforce it, that Stewart's attorney delivered a proposed deed to the Aiellos' then attorney, Jerry Sadler, to be signed by them as required by the judgment. On June 30, 1988, Stewart paid the Aiellos $319,000,[3] requesting that the Aiellos deliver the deed. The Aiellos refused, claiming Stewart still owed money under the judgment, but finally delivered a deed on September 11, 1989. Stewart never paid the additional amounts due under the judgment for $100 per day delay damages, nor for post-judgment interest. The Aiellos finally brought a second suit alleging various violations of the insurance code, DTPA, and breach of the duty of good faith and fair dealing for acts after entry of the judgment. They have obtained judgment against Stewart for its breach of the duty of good faith and fair dealing for its acts and omissions after entry of the agreed judgment.

## GOOD FAITH AND FAIR DEALING

Texas law recognizes several degrees of relationship giving rise to duties greater than those owed to society at large. *Crim Truck & Tractor Co. v. Navistar Internat'l Transp. Corp.*, 823 S.W.2d 591, 593–94 (Tex.1992). Fiduciary duties are those that impose the highest duties in law, and are generally imposed upon certain formal legal relationships as a matter of law. *Id.; Kinzbach Tool Co., Inc. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 513 (1942) (principal/agent); *Johnson v. Peckham*, 132 Tex. 148, 120 S.W.2d 786, 787 (1938) (partners); *Perfect Union Lodge No. 10 v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988) (trustee/beneficiary). "Confidential relationships" may impose fiduciary duties, but are created not by formal legal relationships but by informal relationships "where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one." *Crim Truck & Tractor*, 823 S.W.2d at 594; *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 261 (1951). Additionally, the Texas Supreme Court has recognized certain "special relationships" that give rise to the duty of good faith and fair dealing. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 212, 213 (Tex.1988); *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). This duty may arise from the express language of a contract or from the nature of the relationship between the parties, where it entails unequal bargaining power and the likelihood of abuse by the more powerful party. *Lovell v. Western Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302 (Tex.App.—Amarillo 1988, writ denied). Although special relationships giving rise to the duty of good faith and fair dealing may occur in other contexts, that between insurer and insured is certainly the most commonly recognized in Texas. The insured-insurer relationship existed between the parties here, and there is no question that Stewart was charged with a duty of good faith and fair dealing for its acts and omissions before entry of the agreed judgment.

■ The duty an insurer owes its insured has been characterized as follows:

A cause of action for breach of duty of good faith and fair dealing lies when it is alleged there is no reasonable basis for denial of a claim, delay in payment, or a failure on the part of the insurer to determine whether there is any reasonable basis for denial or delay. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). Thus, a bad faith claim may arise in two instances: (1) when an insurer denies an insured's claim, or (2) when an insurer is obligated to pay proceeds on an insured's claim and it is dilatory in paying. *Martinka v. Commonwealth Land Title Insurance Co.*, 836 S.W.2d 773, 776 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

Stewart argues that it cannot be liable for breach of the duty after the judgment was entered, as the relationship, with its attendant responsibilities, ended upon entry of judgment. This, it claims, is because there was no longer an inequity of bargaining power between the parties and thus no special

---

3. The payment was not made by cashier's check, as contemplated in the settlement agreement recited in open court. Instead, it was written on Stewart's checking account. No complaint is made, however, that the check was not honored.

**470**

protection for the insured, now judgment creditor, is needed. Stewart cites no case, and we have found none, specifically holding that the duty of good faith and fair dealing ends upon the entry of judgment. Stewart relies instead upon the rationale the Supreme Court put forward for imposing the duty:

> In the insurance context a special relationship arises out of the parties unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims. In addition, without such a cause of action insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed. An insurance company has exclusive control over the evaluation, processing and denial of claims. For these reasons a duty is imposed that '[A]n indemnity company is held to that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business.' *Arnold* at 167, quoting *G.A. Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544, 548 (Tex.Comm'n App.1929, holding approved).

The Aiellos, on the other hand, rely upon the case of *Aetna Casualty and Surety Company v. Marshall,* 724 S.W.2d 770, 771 (Tex.1987) in support of their position that the duty of good faith and fair dealing may survive entry of judgment, particularly where the insurer must still perform certain acts in its capacity as insurer. In *Marshall,* the Supreme Court enforced a judgment based on violations of Tex.Ins.Code Ann. art. 21.21 against an insurer *after* an agreed judgment, a compromise settlement agreement in a workers' compensation case, had been entered by the parties. *Marshall,* 724 S.W.2d at 772. In *Marshall,* although the Supreme Court did not reach the issue of whether the duty of good faith and fair dealing continued after entry of the agreed judgment, we see no real distinction between the continuing nature of that duty and those imposed by Article 21.21. The insurance code prohibits unfair settlement claims practice, defined as "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear." Tex. Ins.Code Ann. art. 21.21–2, § 2(d) (Vernon 1981). We believe this provision essentially codifies the court-created duty of good faith and fair dealing. In *Marshall,* the Court held:

> Aetna's contention that a judgment is not an insurance policy is likewise irrelevant. The question is simply whether Aetna engaged in conduct prohibited by section 17.46 [as adopted by the Insurance Code.] The jury found that Aetna misrepresented the medical benefits that it would pay under the agreed judgment. *Marshall,* 724 S.W.2d at 772.

Such was the case here, too. The jury found that Stewart Title failed to pay the Aiellos within a reasonable time from entry of the agreed judgment; that Stewart had breached its duty of good faith and fair dealing in the way it handled the Aiellos under the agreed judgment; and that it had acted with conscious indifference to their rights. We conclude that delay in making an agreed payment (certainly a situation in which liability is clear), whether pre-or post-judgment, is governed by the duties imposed by the parties' special relationship. Moreover, the agreed judgment here contained a provision requiring further acts be performed by Stewart in its capacity as the insurer of title to the Aiellos' home: that is, that Stewart hold a closing to transfer title from the Aiellos to Stewart's designee. As acknowledged by Stewart during trial here, the passing of title to real property usually entails more than a simple exchange of deed for dollars. The judgment here contemplates (although admittedly in less than artful terms) a real estate closing; the handwritten provision for liquidated damages at $100 per day "until closing papers are signed" reinforces this interpretation of the judgment. Stewart received a $1,000 credit on the agreed judgment, intended as compensation for holding the closing. The agreement recited by counsel in open court clearly contemplated a closing to be arranged by Stewart.

We therefore conclude that entry of judgment did not relieve Stewart of the responsibilities imposed by its special relationship with its insureds, just as it did not relieve Stewart of its responsibilities imposed by the insurance code. We hold a claim for breach of the duty of good faith and fair dealing was made under the facts here, even after the agreed judgment was entered. *See Marshall,* 724 S.W.2d at 772. Where a special relationship was the basis of the underlying controversy between the parties, and particularly where an agreed judgment affirmatively requires the performance of further acts by the breaching party in fulfillment of its duties imposed by the special relationship, the duty of good faith and fair dealing continues until those acts are complete. Stewart's Point of Error One is overruled.

## FACTUAL AND LEGAL SUFFICIENCY OF EVIDENCE

In Stewart's Points of Error Two, Three, and Four, it urges that there was no evidence, or insufficient evidence, to support the submission of several jury questions. In considering a "no evidence" or legal insufficiency point, the appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987).

A factual insufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Worsham Steel Co.,* 831 S.W.2d at 83. The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support a finding, it must be sustained. *Carrasco v. Goatcher,* 623 S.W.2d 769, 772 (Tex.App.—El Paso 1981, no writ). It is not within the province of this Court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Reynolds v. Kessler,* 669 S.W.2d 801, 807 (Tex.App.—El Paso 1984, no writ). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 511–12 (1947). The jury questions Stewart complains of were posed as follows:

### QUESTION NO. 2

Did Stewart Title Guaranty Company breach its duty of good faith and fair dealing in the way it handled the Aiellos under the Agreed Judgment?

. . . . .

### QUESTION NO. 3

Was such breach, if any, a proximate cause of any damages to Roger and Evelyn Aiello?

. . . . .

### QUESTION NO. 4

Did Stewart Title Guaranty Company, with regard to such breach, if any, exhibit such an entire want of care which would raise the belief that its conduct was the result of a conscious indifference to the rights or welfare of Roger and Evelyn Aiello?

The jury answered yes to each question. After reviewing the record, we find it contains legally and factually sufficient evidence to support the jury's affirmative responses.

Specifically, we find the following evidence supports the jury's conclusions. Despite an agreement recited in open court and memorialized in an agreed judgment, and despite repeated requests over several months for payment on the judgment, Stewart refused to respond and took no steps toward honoring the agreed judgment. Stewart simply ignored all attempts to complete the transaction once it obtained entry of the agreed judgment, avoiding a trial on the underlying dispute. Eventually, the Aiellos pursued execution of the deed to the property in an effort to procure payment of the principal sum, were forced to hire new counsel to

collect the judgment, and engaged in post-judgment enforcement efforts and discovery. It was not until June 30, 1988, two and one-half months after the agreed judgment was signed, and only in the face of imminent execution by a constable, that Stewart finally paid the principal amount of the judgment to the Aiellos. The Aiellos were forced to continue making mortgage payments, pay taxes and insurance, obtain additional vacancy coverage at added expense, pay for upkeep and maintenance of the property, obtain rentors and pay property management fees, all to their damage. We overrule Points of Error Two through Four.

 In its fifth point of error, Stewart argues the trial court erred in submitting jury questions 5(b) and 6, regarding the Aiello's damages for mental anguish. Mental anguish damages are recoverable in connection with a defendant's breach of a legal duty. *Boyles v. Kerr,* 855 S.W.2d 593, 594 (Tex.1993) (opin. on rehearing). Because Stewart had a duty to exercise good faith and fair dealing in fulfilling the terms of the agreed judgment, and Stewart breached its duty, the Aiellos are entitled to recover mental anguish damages, if there is evidence to support them. In reviewing the sufficiency of the evidence to support an award for mental anguish, we have stated that mental anguish has been defined in such a way as to imply:

> [A] relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation. *Worsham,* 831 S.W.2d at 85–86.

We note that each case involving a mental anguish award is to be reviewed on its own facts, and that once the plaintiff establishes some amount of mental anguish, the jury's decision as to the amount awarded in compensation is "virtually unreviewable." *Dillard's Dept. Stores, Inc. v. Strom,* 869 S.W.2d 654, 659 (Tex.App.—El Paso 1994, writ dism'd by agr.). Awarding mental anguish

damages is an area where deference to the fact finder is crucial. It is within the jury's province to judge the credibility of witnesses and the weight to be given their testimony. *Kneip v. UnitedBank–Victoria,* 774 S.W.2d 757, 759 (Tex.App.—Corpus Christi 1989, no writ).

At trial, Mrs. Aiello testified that she felt "relieved" after reaching agreement with Stewart, but her relief faded when the issue was not resolved. She felt a sense of "helplessness," and "total ... disbelief" that nothing had been settled with Stewart despite their agreement. Mrs. Aiello was "dismayed" when her case was referred to another lawyer, someone specializing in collection of judgments, because she had to start with someone else. She was "[a]ngry, depressed, upset" every time she called her attorney to check on the progress of the case. Mrs. Aiello testified that several times she felt like giving up and forgetting the whole thing, but she did not because she and her husband had made a commitment to see the case through to the end. As to the effect the case had on her husband, she testified that he was "upset and frustrated because I was upset and frustrated." Most tellingly, she and her husband were separated for months while waiting to resolve the case, and the lack of resolution affected what little time they had together.

 In light of the facts and circumstances that were related to the jury during trial, it is apparent that the Aiellos satisfied the requirement that they must demonstrate more than mere worry, anxiety, vexation, embarrassment, or anger. *State Farm Mut. Auto. Ins. Co. v. Zubiate,* 808 S.W.2d 590, 601 (Tex.App.—El Paso 1991, writ denied). The couple was separated for months so that the dispute could be resolved. The jury could properly consider all the evidence as to what had taken place in the Aiellos' lives as a result of Stewart's conduct. *Id.* We overrule Point of Error Five.

### PUNITIVE DAMAGES

 In its sixth point of error, Stewart complains that the trial court erred in submitting an exemplary damage issue to the jury, and in rendering judgment assessing

exemplary damages. Stewart also claims the exemplary damage award is excessive. Finding that Stewart acted with conscious indifference in breaching its duty, the jury awarded the Aiellos $200,000 in exemplary damages. The breach of the duty of good faith and fair dealing gives rise to a tort cause of action and the right to recover both actual and punitive damages. *See Transportation Insurance Company v. Moriel,* 879 S.W.2d 10, 18 (Tex.1994); *Arnold,* 725 S.W.2d at 168.[4]

Exemplary damages must be reasonable in relation to the actual damages and the conduct of the party sought to be punished. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). The factors a reviewing court should consider in determining whether an award of exemplary damages is proper include: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.* The appellate court must view the evidence and facts in the light most favorable to the damage award. *Chemical Express v. Cole,* 342 S.W.2d 773, 780 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.). The amount to be awarded as exemplary damages rests in the discretion of the jury, *Southwestern Inv. Co. v. Neeley,* 452 S.W.2d 705, 708 (Tex.1970), and will not be disturbed on appeal on the grounds of excessiveness if there is any probative evidence to support it. *See Delta Drilling Co. v. Cruz,* 707 S.W.2d 660, 666 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Unless the award is so large as to indicate that it is a result of passion, prejudice, or that the evidence has been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive. *Kraus v. Alamo Nat'l Bank of San Antonio,* 586 S.W.2d 202, 208 (Tex.Civ.App.—Waco 1979), *affirmed and cited with approval, Alamo Nat'l Bank v. Kraus,* 616 S.W.2d at 910.

We believe that the evidence supports an award of exemplary damages and that the award is not excessive. The record here shows a couple repeatedly ignored by their title insurance company after it had promised to pay a settlement under an agreed judgment, despite ongoing attempts to resolve the dispute. The company failed to do anything in furtherance of the agreed transaction once it obtained a settlement on the underlying transaction for which it had admitted liability. A clearer example of conscious indifference is hard to imagine. We find that the exemplary damages here were reasonably proportionate to the actual damages. Point of Error Six is overruled.

### ATTORNEY'S FEES

Stewart's seventh point of error contends the trial court erred in failing to award attorney's fees against the Aiellos under its counterclaim for breach of contract. We agree.

The trial court apparently refused to award its attorney's fees based on the Aiellos' contention that Stewart failed to "present" its claim as required by TEX.CIV. PRAC. & REM.CODE ANN. § 38.002 (Vernon 1986). TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 provides that:

A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

. . . . .

(8) an oral or written contract. TEX.CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1986).

Both parties sued for breach of contract based upon the agreed judgment and the jury found both in breach. Accordingly, both parties were entitled to recover their attorney's fees so long as they complied with the presentment requirements of § 38.002. An award of attorney's fees to a plaintiff recovering on a valid claim founded on a written or oral contract, preceded by proper present-

---

4. We note this case was tried prior to the Supreme Court's decision in *Moriel,* which fundamentally changed the law of exemplary damages in good faith and fair dealing cases. We will therefore employ the procedural review contemplated in *Moriel,* but apply the substantive law in effect when the case was tried.

ment, is mandatory. *Arguelles v. Kaplan,* 736 S.W.2d 782, 786 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *Caldwell & Hurst v. Myers,* 714 S.W.2d 63, 65 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 645 (Tex.App.—Corpus Christi 1984, no writ). Section 38.002 requires that:

> To recover attorney's fees under this chapter:
>
> (1) the claimant must be represented by an attorney;
>
> (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and
>
> (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented. TEX.CIV.PRAC. & REM.CODE ANN. § 38.002 (Vernon 1986).

It is well established that no particular form of presentment is required. *Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex.1981); *Adams v. Petrade Int'l., Inc.,* 754 S.W.2d 696, 719 (Tex. App.—Houston [1st Dist.] 1988, writ denied). Nor is there a requirement that the presentment include any mention of a sum or amount owing. *Arch Constr., Inc. v. Tyburec,* 730 S.W.2d 47, 50 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Stuckey v. White,* 647 S.W.2d 35, 38 (Tex.App.—Houston [1st Dist.] 1982, no writ). Furthermore, recovery is allowable even if the award is entirely offset by the opposing party's claim. *McKinley v. Drozd,* 685 S.W.2d 7, 10 (Tex. 1985).

▆ The Aiellos urge that Stewart is not entitled to attorney's fees because it did not plead presentment. Although it was not part of Stewart's pleadings, we find the issue of presentment was tried by consent. Unpleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991). The party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal. *Id.*

The record reflects that shortly after Stewart paid $319,000, it made demand on the Aiellos' attorney for the deed to the property. In response to interrogatories, Mrs. Aiello acknowledged that as of May 2, 1989, the deed had not yet been delivered. In addition, on May 16, 1989, Stewart's attorney sent a letter regarding the Aiellos' failure to deliver the deed. The testimony of both parties' attorneys acknowledge Stewart's request for delivery of the deed. This constitutes sufficient evidence of presentment to satisfy the requirements of § 38.002. *See Welch v. Gammage,* 545 S.W.2d 223, 226 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.). We sustain Point of Error Seven.

In its eighth point of error, Stewart first claims the trial court erred in awarding contingent attorney's fees based upon tort damages. In reviewing the trial court's final judgment, the court awarded the Aiellos $80,000 as "[a]ttorneys fees pursuant to Question No. 12a." In answer to Question No. 12(a), the jury found reasonable attorney's fees for preparation and trial of the case, expressed in percentage terms, to be 33⅓ of the Aiellos' recovery. The amount actually awarded by the trial court, however, was that provided in response to Question No. 11(a), in terms of dollars and cents. We conclude that the reference to Question No. 12(a) was a clerical error and that the trial court intended to award the Aiellos their attorney's fees in accordance with the answer to Question No. 11(a). Because the court found and the parties stipulated to certain damages in connection with the breach of contract cause of action, we also conclude that the award to the Aiellos of their attorney's fees is authorized by TEX.CIV.PRAC. & REM.CODE ANN. § 38.001, independent of any award for tort damages.

▆ Stewart next contends that there was no evidence or insufficient evidence to support the award of attorney's fees to the Aiellos. Its complaint here is twofold. First, Stewart complains that there was insufficient evidence to support the award of paralegal fees to the Aiellos. Nelson Heggen, the Aiellos' trial attorney, during the trial, testified that he was assisted in the preparation of this case by a paralegal and

that she drafted pleadings and kept him organized. He also testified as to the hourly rate charged for the paralegal services and the number of hours expended by the paralegal in preparation of this case. We find this evidence was legally and factually sufficient under *Moody v. EMC Services, Inc.*, 828 S.W.2d 237, 248 (Tex.App.—Houston [14th Dist.] 1992, writ denied) to support an award of paralegal fees.

■ Secondly, Stewart asserts that the Aiellos' attorney's fees and paralegal fees must be reduced by 20 percent and 15 percent respectively to reflect work that predated the agreed judgment. Where the parties arrive at a compromise settlement of a disputed claim and enter into an agreed judgment which is, in effect, an accord and satisfaction intended to settle all disputed matters between them including attorney's fees, the parties are barred from asserting new claims for attorney's fees for services predating the accord and satisfaction. *See Dickson v. Stockman*, 411 S.W.2d 610, 613 (Tex.Civ. App.—Texarkana 1966, writ ref'd n.r.e.).

The only evidence offered in support of the Aiellos' attorney's fees were the testimonies of Mr. Heggen and Jerry Sadler, another attorney who was employed by the Aiellos to collect the agreed judgment. Mr. Heggen testified that through trial he had logged a total of 400 hours working on the Aiellos' case. He testified that this time was billed out at $150 an hour. He further testified that approximately 20 percent of that time was attributable to issues that predated the agreed judgment.

In addition, Mr. Heggen testified that his paralegal had expended a total of 263 hours on the Aiellos' case. This time was billed out at $50 an hour. Fifteen percent of this time concerned issues that predated the 1988 agreed judgment. Mr. Sadler testified that he charged the Aiellos, at the rate of $150 per hour, a total of $6,645.75 for his services. This testimony supports at most an award of $79,795.75 for legal work done on behalf of the Aiellos, both before and after the agreed judgment. After deducting the percentage amounts of attorney's and paralegal fees attributable to legal work predating the agreed judgment, the evidence supports an award of

attorney's fees in the amount of $65,823.25. While there is evidence to support an award in that amount, we find no evidence to support an award of the difference between that amount and the amount of $80,000 found by the jury. We therefore sustain Point of Error Eight as to the award of attorney's fees for services predating the agreed judgment, and reform the judgment to reflect an award of $65,823.25.

In its ninth point of error, Stewart complains of the appellate attorney's fees awarded to the Aiellos on three grounds: first, that the language giving Stewart a credit if it would forego appeal impermissibly penalizes Stewart for a successful appeal; second, that the award of such fees is excessive and not predicated on the Aiellos' success or failure on appeal; and third, there is either no evidence or insufficient evidence to support the submission of questions, and the jury's answers, relating to such fees.

■ In the final judgment, the trial court awarded the Aiellos their appellate attorney's fees in the following language:

If no appeal is taken, Defendant [Stewart] may take a credit of Three Thousand Five Hundred and No/100 ($3,500.00) Dollars against the amount of the Judgment. If no application for Writ of Error is made to the Texas Supreme Court, Defendant may take a credit of Two Thousand and No/100 ($2,000.00) Dollars. If application for Writ of Error is made, but not granted, Defendant may take a credit of One Thousand and No/100 ($1,000.00) Dollars against the Judgment.

The regrettable wording of this award would indeed result in Stewart being penalized for taking a successful appeal. *Goldman v. Alkek*, 850 S.W.2d 568, 577 (Tex.App.—Corpus Christi 1993, no writ). A trial court may not grant appellate attorney's fees without conditioning the award on the success of the appeal, as appellee's entitlement to such fees is dependent on its success or failure in defending the appeal. *Southwestern Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 834 (Tex.App.—Corpus Christi 1991, writ denied); *Siegler v. Williams*, 658 S.W.2d 236, 241 (Tex.App.—

Houston [1st Dist.] 1983, no writ). The award was, to that extent, in error.

As for the amounts of appellate attorney's fees found by the jury and awarded to the Aiellos in the judgment, we conclude that the awards were neither excessive nor unsupported by the evidence. The Aiellos' attorney testified as to both the number of hours and the dollar amounts estimated for each step in the appellate process. The jury found much less for each step than the amounts to which he testified. Stewart's ninth point of error is sustained as to the complaint relating to the failure to condition the award of appellate attorney's fees on the success or failure of the appeal, but otherwise overruled.

## MOTION FOR NEW TRIAL

In its tenth and final point of error, Stewart asserts that the trial court erred in overruling its motion for new trial and its objections to jury Question No. 1, because there was no evidence, or insufficient evidence, to support the submission of that question. Question No. 1 inquired about Stewart's alleged breach of contract by not paying the agreed judgment sum of $319,000 within a reasonable time. Stewart contends there is a lack of evidence from which the jury could determine what period constituted a "reasonable time."

" 'Reasonable time' is a relative term. It never means an indulgence in unnecessary delay; instead, it denotes such promptitude as the circumstances will allow for the action called for by the contract." *Price v. Horace Mann Life Ins. Co.*, 590 S.W.2d 644, 646 (Tex.Civ.App.—Amarillo 1979, no writ). What constitutes a reasonable time is a fact question wholly within the province of the jury. *HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 623 (Tex.App.—Austin 1992, writ denied). Stewart's former attorney admitted on cross-examination that Stewart could have closed on the Aiellos' house with three to four days' notice. The record reflects that Stewart took over two and one-half months after entry of the agreed judgment to pay the $319,000 to the Aiellos, and even then only paid that sum when the Aiellos' attorney obtained a writ of

execution and a constable came to execute it at Stewart's offices. No explanation for this lengthy delay has ever been put forward. The record reflects that Mr. Sadler placed numerous unanswered telephone calls to Mr. Mitchell in an attempt to close the transaction; Sadler's telephone log reflects approximately thirty-two such calls in the period between May 24 and September 1, 1988. Mitchell never returned these calls, nor did anyone on his behalf. The record also reflects a number of letters, the tone of frustration escalating in each succeeding communication, trying to obtain a response to counsel's attempts to close the matter. The jury's determination that Stewart did not act within a reasonable time is supported by some evidence and is not against the great weight and preponderance of the evidence. The trial court did not err in denying Stewart's motion for new trial on this ground. Point of Error Ten is overruled.

## CROSS–POINTS

The Aiellos complain by their first cross-point that the jury questions on the Aiellos' breach of the agreed judgment were improper. They assert the questions did not properly frame any cause of action pleaded by Stewart and did not support any award for breach of contract. Stewart pleaded, however, that the Aiellos breached the contract by failing to deliver a deed to the property until some fourteen months after Stewart had made the basic payment required by the agreed judgment. There was evidence to support this allegation. Jury Question No. 8 asked:

Did the Aiellos fail to deliver the deed to Stewart Title Guaranty Company or its nominees within a reasonable time after the receipt of at least $319,000.00?

The Aiellos objected to the submission of this question on the grounds that there was no evidence to support its submission and that Stewart was required to provide a contemplated "closing" before the Aiellos were obligated to provide the deed. Because Stewart never paid the $100 per day delay costs required by the agreed judgment, or any post-judgment interest imposed by law, the Aiellos argue that Stewart remained in

default and was not entitled to recover for any breach on their part. *Gulf Pipe Line Co. v. Nearen*, 138 S.W.2d 1065, 1068 (Tex. 1940).

We conclude that the agreed judgment is ambiguous as to whether Stewart was entitled to a deed at the time it paid the sum of $319,000 to the Aiellos, as contended by Stewart, or whether it was not entitled to a deed until it paid not only the $319,000 but also all costs, including the $100 per day delay penalty and the post-judgment interest, as contended by the Aiellos. A contract is ambiguous when its meaning is doubtful and uncertain or it is reasonably susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). The determination of whether a contract is ambiguous is a question of law which the court must decide by examining the contract as a whole in the context of the circumstances existing at the time the contract was agreed upon. *Id.* at 393–94. When a contract is ambiguous, a fact question is presented as to the intention of the parties, a question which the fact finder should determine from the language of the contract itself. *Id.* at 394–95.

The Aiellos failed to request a jury question with regard to the intention of the parties as to when they were required to deliver the deed. As a result of this failure, we must, in support of the judgment, deem a finding by the trial court that Stewart was entitled to a deed at the time the Aiellos were paid the $319,000 or within a reasonable time thereafter. *See* Tex.R.Civ.P. 279; *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex.1986). Consequently, the Aiellos cannot now assert that they were not in breach of the agreed judgment or that Stewart's counterclaim is without support in the evidence. Cross-point One is overruled.

In their second cross-point, the Aiellos argue that the trial court erred in awarding attorney's fees on appeal in an amount far less than would be supported by the evidence.

It is the general rule that the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990). There is an exception to this rule where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon. *Id.; see also Gunter v. Bailey*, 808 S.W.2d 163, 165 (Tex.App.—El Paso 1991, no writ). In such a situation, the testimony is taken as true, as a matter of law. *Id.* This exception is especially true where the opposing party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so. *See Anchor Casualty Co. v. Bowers*, 393 S.W.2d 168, 169–70 (Tex.1965) (emphasis in original). In order for a court to award an amount of attorney's fees as a matter of law, the evidence must fit the exception. *See Ragsdale*, 801 S.W.2d at 882; *Van Waters & Rogers, Inc. v. Quality Freezers, Inc.*, 873 S.W.2d 460, 464 (Tex.App.—Beaumont 1994, writ denied).

This does not require, however, that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed. *Ragsdale*, 801 S.W.2d at 882. If the evidence is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact. *Id.* Here, the evidence as to the amount of attorney's fees was uncontroverted. The Aiellos therefore contend that it was error for the jury to reduce the award. This would be true unless the jury found that attendant circumstances contradicted the requested fees. *Schoeffler v. Denton*, 813 S.W.2d 742 (Tex.App.—Houston [14th Dist.] 1991, no writ). The judgment of the trial court implies all necessary findings of fact to support it, and therefore, the trial court must have found the requested attorney's fees contradicted by attendant circumstances or in some way unreasonable. *Id.* We must infer that the jury found the uncontroverted testimony of the costs of the various appeals unreasonable. Cross-point Two is overruled.

In their third cross-point, the Aiellos contend that the trial court erred in refusing to enter judgment in their favor under the Texas Insurance Code and the DTPA. Similarly, in their seventh cross-point, the Aiellos claim the trial court erred in refusing to submit jury issues on Stewart's alleged violations of the Texas Insurance Code and DTPA. First, the Aiellos argue that the jury's findings that Stewart acted with conscious indifference in its breach of its duty of good faith and fair dealing entitled them to judgment under Article 21.21 and the DTPA. *See Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988). If the trial court erred in refusing to submit the Aiellos' jury questions on those theories of recovery, we find it was harmless error because the Aiellos recovered for Stewart's breach of the good faith duty. The Aiellos' award under the good faith duty amounted to a more favorable recovery then they would have received under the other theories. Furthermore, the trial court properly excluded jury questions relating to Stewart's alleged violations that occurred prior to the agreed judgment. As discussed above, those claims were barred by *res judicata*. Although under other circumstances it would be error for the trial court to refuse recovery under these theories, here any error was harmless. The Aiellos' award for damages for Stewart's breach of good faith and fair dealing was the most favorable recovery they could have received out of those pleaded. A prevailing party is entitled to one full recovery, and only one, under applicable jury findings. *See, e.g., El Paso Natural Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex.1993) (per curiam). Similarly, although the Aiellos claim the trial court erred in refusing to submit jury issues on Stewart's alleged violations of the Texas Insurance Code and DTPA, any error in failing to submit these issues was harmless. Cross-point Seven is overruled.

The Aiellos also request additional damages of $100 per day from March 20, 1988 until closing papers were signed, as well as post-judgment interest. The Aiellos' basis for their claim of $100 per day is the handwritten portion of the agreed judgment indicating that costs include $100 per day from March 20, 1988 until closing papers are signed and funds received. The judgment recites that the Aiellos are to receive $100 per day from April 11, 1988 to June 30, 1988, amounting to $10,200. The Aiellos did not submit a jury question inquiring whether they were entitled to $100 per day until closing papers were signed. We must therefore deem a finding by the trial court that the Aiellos were entitled to $100 per day up to the date Stewart paid them $319,000 on June 30, 1988 and no later. As we discussed earlier, the ambiguous wording of the judgment supports this interpretation. Cross-point Three is overruled.

In their fourth cross-point, the Aiellos complain that the trial court erred in granting Stewart's motion for summary judgment on their claims under the DTPA, the duty of good faith and fair dealing, negligence, gross negligence, and Article 21.21, all of which involved acts occurring prior to entry of the agreed judgment.

In support of their argument that various tort causes of action, including breach of the good faith duty, remained viable after the agreed judgment was signed, the Aiellos cite *Griffin v. Holiday Inns of America*, 496 S.W.2d 535 (Tex.1973) and *Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517 (Tex.1984). *Griffin* was overruled by *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex.1992) and *Gracia* involved the effect of *res judicata* upon an individual's claims when suing in separate and distinct capacities.

Under the current doctrine of *res judicata*, a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose. *Getty Oil Co. v. Insurance Co. of North America*, 845 S.W.2d 794, 798 (Tex.1992); *Barr*, 837 S.W.2d at 631. Consequently, suit by the Aiellos based upon Stewart's alleged acts occurring prior to the date of the agreed judgment are barred. *Soto v. Phillips*, 836 S.W.2d 266, 269 (Tex. App.—San Antonio 1992, writ denied). The trial court's granting of summary judgment as to those causes of action on the affirmative defense of *res judicata* was correct. Cross-point Four is overruled.

In their fifth and sixth cross-points, the Aiellos claim the trial court erred by excluding evidence of Stewart's actions prior to the entry of the agreed judgment and by refusing to submit jury questions to determine the applicability of the statute of limitations, another of Stewart's affirmative defenses. The trial court, following its grant of Stewart's motion for partial summary judgment, properly limited the scope of this trial to evidence of Stewart's conduct occurring after the entry of the agreed judgment. Having granted that motion, the limitations defense was no longer relevant. Evidence of any acts or conduct which occurred prior to entry of the agreed judgment was properly excluded and the court's refusal to submit any questions relating to the applicability of the statute of limitations was also proper. Cross-points Five and Six are overruled.

On rehearing, the Aiellos note this Court's opinion assessed costs against Stewart, but that the judgment improperly reflected that costs be assessed against the Aiellos. We agree this was a clerical error and reform our judgment to assess costs against Stewart.

### CONCLUSION

We affirm in part and reverse and render in part. We reform the judgment to reflect that the Aiellos recover attorney's fees in the sum of $65,823.25, and that Stewart receive credit for attorney's fees in the amount of $87,500 for the trial of this case and $1,500 for appeal to this Court. All costs of this appeal are assessed against Stewart Title Guaranty Company.